IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IDERICK PATRYCK CALLENS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 2:11-CV-01553-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner of Social Security, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

## I.  Introduction

The plaintiff, Iderick P. Callens, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Callens timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Callens was thirty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has at least a high school education. (Tr. at 12.)

His past work experiences include employment as a bagger and stocker at a grocery store, spotter at a dry cleaner, concrete finisher, insulation blower, truck driver, and welder. (Tr. at 12, 40-43.) Mr. Callens claims that he became disabled on December 28, 2004, as a result of neck and left arm pain from a work-related fall. (Tr. at 13, 43-45.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether

the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Callens meets the nondisability requirements for a period of disability and DIB, and was insured through the date of his decision.  (Tr. at 13.)  He further determined that Mr.

Callens has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's status post cervical discectomy and fusion are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 15.) The ALJ did not find Mr. Callens's allegations to be totally credible, and he determined that he has the residual functioning capacity ("RFC") to lift ten pounds, to stand or walk two hours in an eight hour workday, and to sit six hours in an eight hour workday. (*Id.*) He also found that the limitations imposed by Plaintiff's partially credible pain complaints limit him to understanding, remembering and carrying out simple, unskilled job instructions. (*Id.*)

According to the ALJ, Mr. Callens is unable to perform any of his past relevant work, and he is a "younger individual" as that term is defined by the regulations. (Tr. at 18.) The ALJ determined that transferability of job skills is not material to the determination of disability in this case. (*Id.*) The ALJ found that Mr. Callens has the residual functioning capacity to perform sedentary work with nonexertional limitations. (*Id.*) Even though Plaintiff cannot perform the full range of sedentary work due to his nonexertional limitations, the ALJ used Medical Vocational Rule

201.28 to find that there are a significant number of jobs in the national economy that he is capable of performing. (Tr. at 18-19.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 19.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir.

1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Mr. Callens alleges that the ALJ's decision should be reversed and remanded for three reasons. First, he believes the ALJ failed to perform a function-by-function analysis in accordance with Social Security Ruling ("S.S.R.") 96-8p. (Doc. 8 at 6.) Second, he contends that the ALJ failed to comply with S.S.R. 96-9p by using the Medical Vocational Rules to conclude that Plaintiff was not disabled. (Doc. 8 at 7.) Third, he asserts that the ALJ failed to develop the record. (Doc. 8 at 7-9.)

#### A. ALJ's Compliance with S.S.R. 96-8p

The plaintiff first argues that the ALJ failed to comply with S.S.R. 96-8p, which requires a specific function-by-function analysis of a claimant's limitations or restrictions regarding work-related abilities. (Doc. 8 at 5.) When making an RFC determination, the ALJ's first step is to identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945. The physical functions taken into consideration in assessing an individual's RFC include "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 CFR §§ 404.1545(b); 416.945(b). Because the RFC is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," the ALJ must make the assessment based on all of the relevant evidence, including:

> medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available.

S.S.R. 96-8p at 4-5. Once the functional limitations or restrictions and work-related abilities are determined, the RFC can "be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." S.S.R. 96-8p at 1.

A review of the record indicates that the ALJ made a proper function-by-function analysis before determining Plaintiff's RFC. The ALJ considered multiple evaluations by Plaintiff's doctors, a consultative physical examination, and a physical RFC evaluation before concluding that Plaintiff was capable of performing sedentary work. (Tr. at 15-18.) Two weeks after Plaintiff fell and injured his foot and ankle on December 28, 2004, treating physician Dr. Donald Slappey indicated Plaintiff had "good range of motion on the left hip and left knee with no symptoms." (Tr. at 149.) Dr. Slappey cleared Plaintiff for sedentary work without climbing or squatting. (*Id.*) In a follow-up appointment on January 20, 2005, Dr. Slappey noted Plaintiff was "complaining of pain out of proportion to the physical findings," and repeated that Plaintiff "can work as long as he does not have to do any climbing." (Tr. at 148.) During another follow-up appointment on January 27, 2005, Dr. Slappey again noted that Plaintiff "could be working but he is not to do any climbing." (Tr. at 147.)

Following a motor vehicle accident on February 2, 2005, Dr. Slappey evaluated Plaintiff and cleared him for "regular activities beginning on Friday, 02/04/05." (Tr.

at 146.) During two visits to the St. Vincent's Occupational Health Clinic on February 7, 2005, and February 18, 2005, Plaintiff was cleared to work without limitation. (Tr. at 171, 173.) While receiving treatment at the Alabama Injury & Pain Clinic, Inc. for the majority of February 2005, Plaintiff's chiropractor Dr. Josephine Rotich consistently noted that Plaintiff was "making progress" and eventually released him "on improved condition." (Tr. at 178-83.) During another appointment on March 7, 2005, Dr. Slappey noted that Plaintiff "has good range of motion in his ankle," that the x-rays of Plaintiff's left ankle showed no abnormality, and indicated that Plaintiff had "been released to regular activity previously and this is unchanged." (Tr. at 221.)

Dr. Matthew Berchuck conducted a physical examination of Plaintiff on September 15, 2005. (Tr. at 215.) After MRI scans of the cervical spine showed left-sided disc herniations at the C5-6 and C6-7 levels, Plaintiff had an anterior diskectomy and fusion performed on February 16, 2006. (Tr. at 209-10, 214.) Plaintiff was directed not to work immediately following his surgery, but Dr. Berchuck noted Plaintiff's incision was healing nicely, and that the x-rays of the cervical spine showed the spacers and his fixation were in excellent position. (Tr. at 208.) Nine weeks after his surgery, Dr. Berchuck cleared Plaintiff to return to light duty work with "a 30-

pound weight lifting limit," restrictions on "climbing of ladders, stairs, or pulls" as well as working around unguarded heights. (Tr. at 205.) Six and a half months after surgery, Dr. Berchuck released Plaintiff to regular duty work with no limitations and placed him on maximum medical improvement after he had 5/5 motor strength in all groups in both upper extremities with some left deltoid weakness and tenderness in the left supraclavicular area. (Tr. at 338.)

While recovering from surgery, Plaintiff participated in sixteen sessions of physical therapy from April 10, 2006, to June 22, 2006. (Tr. at 275.) Plaintiff's discharge summary shows he met fifty percent of his goals, and he increased his range of motion, flexibility, strength, endurance, and had decreased pain or spasms. (Tr. at 275.) Hospital records from August 19, 2006, indicated a painless range of motion in Plaintiff's back, that his extremities were non-tender with a full range of motion, that no gross motor or sensory deficits were found, and that Plaintiff's reflexes were normal. (Tr. at 302.) During this time Plaintiff sought treatment from Dr. Robert Wolf, complaining of heel pain, and Dr. Wolf noted that Plaintiff had a full range of motion, his x-rays were normal, he had an exaggerated pain response and amplification of symptoms, and he could remain on full duty at work. (Tr. at 311-12.) Additionally, during another follow-up appointment with Dr. Berchuck on February 20, 2007, Dr.

Berchuck noted that Plaintiff's restrictions remained unchanged and he could return to work with no restrictions, after he found that Plaintiff's neck incision was completely healed, he had full motion on the cervical spine, his right upper extremity displayed 5/5 motor strength in all groups, and a diffuse 3/5 strength in the left upper extremity. (Tr. at 323.)

On March 31, 2007, Plaintiff was examined by Dr. Raveendran Meleth, a consultive examiner, who found Plaintiff unable to lift more than five pounds, unsteady and unable to walk without a cane, unable to squat, and unable to tandem. (Tr. at 354.) As noted by the ALJ, Dr. Meleth reported the plaintiff had "significantly reduced range of motion in the neck, markedly reduced range of motion in the back, and somewhat decreased range of motion in the hips, left shoulder, elbows and wrists." (Tr. at 17.) Less than two weeks later, state agency decision maker Maxine Laffitte conducted Plaintiff's physical RFC, and found him capable of the following exertional limits: occasionally lifting fifty pounds, frequently lifting twenty-five pounds, standing or walking about six hours in an eight-hour work day, sitting about six hours in an eight hour work day, and unlimited pushing or pulling. (Tr. at 359.) Ms. Laffitte also determined Plaintiff's postural limitations to include frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs,

but never climbing ladders, rope, or scaffolds. (Tr. at 360.) She found Plaintiff's manipulative limitations for handling, fingering, and feeling to be unlimited, and found a limited ability to reach in all directions, including overhead. (Tr. at 361.) Finally, Ms. Laffitte determined Plaintiff's only environmental limitation was to avoid unprotected heights. (Tr. at 362.) After considering all of the aforementioned evaluations from Plaintiff's doctors and the record as a whole, the ALJ concluded Plaintiff was capable of performing sedentary work.

    Plaintiff claims the ALJ did not provide any analysis of postural functions such as balancing, stooping, kneeling, and crouching, or any analysis of manipulative functions such as reaching, arguing that Dr. Meleth's reduced range of motion findings regarding his spine, lumbar region, hips, knees, ankles, shoulders, elbows, and wrists warranted such analysis. (Doc. 8 at 6.) However, the evidence did not support a conclusion that Plaintiff had limitations in these functions. Dr. Meleth's findings are inconsistent with Plaintiff's physicians' records, hospital records, physical therapy progress notes, and the record as a whole. While Plaintiff's limitations varied due to his initial fall, the automobile accident, and his surgery, he was cleared to return to regular duty without limitations on multiple occasions by Dr. Slappey, Dr. Wolf, and Dr. Berchuck. (Tr. at 146, 171, 173, 221, 323-24, 326-29, 338.) Plaintiff's doctors

never mentioned any complaints about any of the above-mentioned nonexertional limitations and manipulative functions. Based on the record as a whole, the ALJ's findings regarding Plaintiff's capabilities are reasonable considering the amount of evidence that fails to support Dr. Meleth's findings.

Plaintiff also claims the ALJ failed to provide any analysis of environmental limitations. (Doc. 8 at 6.) However, the ALJ considered Plaintiff's environmental limitations. The ALJ reviewed and gave significant weight to the numerous treatment notes of Dr. Berchuck, who stated after Plaintiff's surgery, "I will not have him working from unguarded heights at this juncture. He will follow up with me in 3 weeks, at which time his clinical status will be rechecked, and we will reassess his work status at that time." (Tr. at 205.) The environmental limitation imposed by Dr. Berchuck was only temporary, as he later cleared Plaintiff to work for regular duty without limitations on multiple occasions after his surgery. (Tr. at 323-24, 326-29, 338-39.) Aside from the temporary limitation of unguarded heights, the record contains no other complaints by Plaintiff of environmental limitations, and no other environmental restrictions placed on Plaintiff by his doctors. Thus, the ALJ made a proper function-by-function analysis, and his determination that Plaintiff is capable of performing sedentary work is supported by substantial evidence.

### B. ALJ's Compliance with S.S.R. 96-9p

Plaintiff next contends that the ALJ failed to comply with S.S.R. 96-9p. (Doc. 8 at 6.) The plaintiff takes issue with the ALJ's decision not to use a vocational expert, and instead to use the Medical Vocational Guidelines (the "grids"), to determine the impact of the plaintiff's RFC upon the full range of sedentary work. (Doc. 8 at 7.) After an ALJ determines a claimant's RFC and his ability or inability to return to past relevant work, the ALJ must determine "whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). In order for an ALJ to forgo the use of a vocational expert and instead use the grids to determine what jobs a claimant is capable of performing, the Eleventh Circuit requires the ALJ to determine both that the claimant can perform the full range of work at a particular exertional level, and that the claimant does not have nonexertional limitations that prevent the performance of a wide range of work at the particular exertional level. *Id.* at 1242. In order to perform the full range of sedentary work, an individual must be able:

> to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very

> little up to one-third of the time, and would generally total no more than about 2 hours in an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p at 3.

### 1. Exertional Limitations

The Eleventh Circuit "has interpreted a 'full range of employment' as being able to do 'unlimited' types of work at the given exertional level." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). Exertional limitations "affect your ability to meet the strength demands of jobs," and include "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569(a). Following a review of Plaintiff's hospital records, treatment notes, physical therapy notes, and the record as a whole, the ALJ determined Plaintiff's exertional limitations consisted of lifting ten pounds, standing or walking for two hours in an eight hour workday, and sitting for six hours in an eight hour work day. (Tr. at 16.) After determining Plaintiff's exertional limitations, the ALJ determined Plaintiff had the residual functional capacity for sedentary work. (Tr. at 17.) Further, the ALJ concluded that Plaintiff was capable of "understanding, remembering and carrying out simple, unskilled work." (Tr. at 17.) Because the ALJ's findings regarding Plaintiff's exertional limitations mirror the

requirements of sedentary work, substantial evidence supports the ALJ's decision to use Medical Vocational Rule 201.28, rather than the testimony of a vocational expert, to determine Plaintiff's disability status.

### 2. Nonexertional Limitations

Once the ALJ determines the exertional limitations, he must determine whether Plaintiff's "nonexertional impairments significantly limit [his] basic work skills." *Phillips*, 357 F.3d at 1243. The Eleventh Circuit "has interpreted 'significantly limit basic work skills' as limitations that prohibit a claimant from performing 'a wide range' of work at a given work level." *Id.*; *See Foote v. Chater,* 67 F.3d 1554, 1559 (11th Cir. 1995) (The ALJ is required to determine "whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level." (internal quotation marks and citations omitted)). Nonexertional limitations "affect an individual's ability to meet the nonstrength demands of jobs" and include mental limitations and restrictions, pain limitations, and all physical limitations and restrictions that are not reflected in the seven strength demands. S.S.R. 96-4p.

The ALJ indicated that Plaintiff's nonexertional mental limitations would prevent the performance of the full range of work at the sedentary level, but "the effect of those limitations on the sedentary occupational base is only slight." (Tr. at

19.) Because Plaintiff's limitations do not significantly limit Plaintiff's basic work skills, the ALJ did not err by finding him "not disabled" under the framework of Medical-Vocational Rule 201.28.

### C. Duty to Develop the Record

Plaintiff argues that the ALJ should have re-contacted Dr. Meleth, the consultative examiner, for clarification, or obtained an opinion from a medical expert, because the last medical record is from six months before the date last insured. (Doc. 8 at 9.) The ALJ has a duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5) ("[A]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Moreover, the claimant's burden is to provide a medical record that is complete, and if he or she fails to do so, the ALJ

will make a decision based on the evidence of record. See 20 C.F.R. §§ 404.1513(e), 404.1516.

Here, there is an abundance of medical evidence from the period in question. The ALJ considered the records of multiple physicians, as well as a consultative examination report and physical RFC assessment. The ALJ noted that the plaintiff had not followed through with his doctors' recommendations and had not required medical treatment of any kind since May 15, 2007. (Tr. at 18.) Because of this, the medical record was adequate to permit a finding that the plaintiff was not disabled prior to the last date insured, without requiring an additional consultative examination or the testimony of a medical advisor. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (finding an ALJ was not obligated to seek additional medical evidence or seek independent expert medical testimony because the evidence in the record was sufficient to support a decision).

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Callens's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

<u>Done this 15th</u> day of <u>August 2012</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
160704